IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2013

**STATE OF TENNESSEE v. COLTON D. WHITELOW**

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-396      Russell Lee Moore, Jr., Judge**

**No. W2012-00527-CCA-R3-CD  - Filed June 25, 2013**

The Defendant, Colton D. Whitelow, was indicted for first degree premeditated murder, first degree felony murder, and aggravated assault. Following a jury trial, the Defendant was convicted of the lesser included offenses of voluntary manslaughter and reckless homicide and acquitted of the aggravated assault charge. See Tenn. Code Ann. §§ 39-13-211, -215. The trial court sentenced the Defendant to an effective ten-year sentence. In this appeal as of right, the Defendant contends (1) that the length of his sentences were excessive; and (2) that the trial court erred in imposing consecutive sentences. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the appellant, Colton D. Whitelow.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

Because the Defendant challenges only his sentences on appeal, we will provide a brief summary of the factual background leading to the Defendant's convictions. This case arose from a massive street fight between residents of Newburn and Ripley, Tennessee on the night of February 27, 2008. An altercation between two women earlier in the day led to approximately thirty people, including two pregnant women, fighting in front of an apartment

complex in Newburn around 9:00 p.m. that night. The fight ended when three men from Ripley began shooting into the crowd.

After the gunfire ended, the victim, Tamara Brown, was found in the street with a gunshot wound to her torso. The victim, who was thirty weeks pregnant at the time, died at the scene. A short time later, her baby was delivered stillborn at a local hospital. The bullet entered the victim just below her left arm pit, traveled through her left and right lungs, and exited from the right side of her body. The victim's baby died due to hypoxia, a lack of oxygen, caused by his mother's death.

At trial, two witnesses testified that they saw the Defendant shoot the victim. Additionally, a .38 caliber bullet fragment with traces of the victim's blood was found at the crime scene. Inside the Defendant's car, police found several other unfired .38 caliber bullets. It was determined at trial that the two other shooters had used a nine millimeter rifle and a .22 caliber handgun. The Defendant claimed that he did not intend to shoot the victim, that "it was a crazy situation," and that he felt "sorry [] about what happened."

At the sentencing hearing, the victim's close friend Melissa Harvey testified that she was raising the victim's orphaned nine-year-old son because he had no other relatives. The Defendant testified that he was only eighteen at the time of the shooting and that he wanted to "[g]o on with [his] life." The Defendant admitted that he was a member of the Gangster Disciples and that the longest period of time he had ever been employed was two weeks. The Defendant also admitted that he had a lengthy juvenile record including adjudications of guilt for vandalism, assault, aggravated burglary, theft over $500, aggravated assault, and probation violations.

The trial court concluded that the following statutory enhancement factors applied to the Defendant: (3) the offense involved more than one victim; (9) the Defendant employed a firearm during the commission of the offense; (10) the Defendant had no hesitation about committing a crime when the risk to human life was high; and (16) the Defendant had been adjudicated as having committed delinquent acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114. The trial court concluded that no mitigating factors applied to this case. The trial court then sentenced the Defendant to six years for the voluntary manslaughter conviction and four years for the reckless homicide conviction.

The trial court noted that the Defendant had "a significant prior criminal [] history as a juvenile" and that the Defendant's prospects for rehabilitation did "not appear to look good." The trial court stated that the Defendant had not accepted responsibility for what he had done and that less restrictive measures than incarceration had previously been applied

to the Defendant and had been unsuccessful. The trial court repeatedly stated that "this [was] a very serious case" and that it would have given the Defendant a greater sentence if it could.

The trial court concluded that the Defendant's actions of shooting into a crowd of people "exhibit[ed] little or no regard for human life" and that the Defendant did not hesitate "to commit a crime when the risk [to] human life [was] high." The trial court further stated that the Defendant's actions showed "a conscious disregard for the lives of everybody [that was] around." The trial court concluded that the Defendant was a dangerous offender and ordered his sentences to be served consecutively for an effective ten-year sentence as a Range I, standard offender.

## ANALYSIS

The Defendant contends that the trial court's imposition of the maximum sentence for each conviction was excessive. However, the Defendant has failed to make any argument beyond this conclusory statement and has failed to cite to any legal authority to support his assertion. As such, the Defendant has waived review of this issue by this court. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, [or] citation to authorities . . . will be treated as waived in this court.").

The Defendant also contends that the trial court erred by imposing consecutive sentences. The Defendant argues that the trial court failed to make the necessary findings to support its conclusion that the Defendant was a dangerous offender. The State responds that the trial court made detailed findings justifying its classification of the Defendant as a dangerous offender that were supported by the proof and consistent with the principles and purposes of sentencing.

The standard of review on the issue of consecutive is unclear under our state's current jurisprudence. Our supreme court recently announced that an "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

However, our supreme court has not issued a definitive ruling on the standard of review to be applied regarding consecutive sentencing. In response, some panels of this court are applying an abuse of discretion standard, while others are continuing to apply a de novo standard of review until instructed otherwise by our supreme court. See generally State v. Eric Demond McCathern, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *4-5 (Tenn. Crim. App. Nov. 16, 2012) (majority applying abuse of discretion standard of review

and concurring opinion advocating de novo standard of review), perm. app. denied, (Tenn. Feb. 25, 2013).

A trial court may order sentences to run consecutively if the trial court finds by a preponderance of the evidence that the "defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b). In addition to this, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed" before it can impose consecutive sentences on the basis that the defendant is a dangerous offender. State v. Wilkerson, 905 S.W.3d 933, 938 (Tenn. 1995).

There is no dispute that the trial court concluded that the Defendant's action of shooting a gun indiscriminately into a crowd of approximately thirty people indicated that he had little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The Defendant argues that the trial court failed to make the necessary findings with respect to the two Wilkerson factors.

However, the trial court in its decision emphasized that the Defendant was a gang member, that the Defendant had a lengthy juvenile record, that measures less restrictive than incarceration had previously been applied unsuccessfully to the Defendant, that the Defendant failed to accept responsibility for his actions, and that the Defendant's prospects for rehabilitation were poor. These facts all support a finding that consecutive sentences were necessary to protect the public against further criminal conduct by the Defendant.

With respect to the second Wilkerson factor, the trial court repeatedly emphasized the severity of the Defendant's offenses and stated that it wished it could impose a longer sentence. The Defendant shot indiscriminately into a crowd of approximately thirty people during a massive street fight. One of the Defendant's bullets struck the pregnant victim in the torso, and she died there in the street. As a result of her death, the victim's baby died due to hypoxia. The trial court did not err in its finding that a ten-year sentence with a release eligibility of thirty percent was reasonably related to the severity of the offenses committed. Based upon either standard of review, de novo or abuse of discretion, we affirm the trial court's imposition of consecutive sentences.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE